UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SANDRA KAY WALKER, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 12-2248 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"),[1] denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts. [See JS 2-3]. On July 17, 2007, plaintiff filed an application for SSI benefits alleging that she had been disabled since April 29, 2006. [Administrative Record ("AR") 20, 68, 104]. In a December 10, 2009 written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") found that plaintiff

---

[1] Carolyn W. Colvin, who became the Acting Commissioner on February 14, 2013, is substituted for her predecessor, Michael J. Astrue. See Fed. R. Civ. P. 25(d).

had severe impairments consisting of tendonitis and depression. [AR 22, 26]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform light work, except that she can occasionally climb, balance, stoop, kneel, crouch and crawl, and can only perform entry level work. [AR 23]. Relying on the testimony of a vocational expert, the ALJ determined that plaintiff's RFC precluded performance of her past work, but did not preclude her from performing light, unskilled jobs available in significant numbers in the national economy. [AR 25-26]. Accordingly, the ALJ concluded that plaintiff not was disabled at any time through the date of his decision. [AR 20, 26].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Credibility finding**

Plaintiff contends that the ALJ failed properly to consider plaintiff's testimony about her subjective symptoms. [JS 15-20].

During the administrative hearing, plaintiff testified as follows. [See AR 23-24, 50-59]. She was 42 years old, left school in the ninth grade, and did not have a driver's license. [AR 50-51, 53]. She was advised not to drive because her medications for Parkinson's disease make her dizzy. [AR 51]. Although she had not been diagnosed with Parkinson's disease by a medical doctor, she was waiting for an appointment to see a neurologist. [AR 52]. She was paying out of pocket for her treatment because she did not have medical insurance, but she had applied to an insurance assistance program and was waiting to hear

back. [AR 52-53]. The only income plaintiff and her husband received was his unemployment insurance. [AR 51, 57]. Plaintiff's treatment providers think she has Parkinson's disease because of the tremors in her hands, legs and feet. [AR 53]. Plaintiff stopped working because the Parkinson's disease and tendonitis made her susceptible to illness, and she progressively got worse. [AR 60]. She took Paroxetine,[2] for muscle spasms, Metformin[3] for diabetes, and Vicodin[4] and Flexeril[5] for pain. [AR 53, 55, 58]. Her pain medications lessened her pain a little, but not enough. [AR 58]. Plaintiff did not check her blood sugar, but got lab work done to monitor her diabetes. [AR 54]. The diabetes medication only helped her symptoms a little bit. [AR 61]. Her weight had fluctuated both up and down in the last few years. [AR 54]. She had hepatitis C that was dormant due to treatment, but she experienced some residual difficulty breathing as a result and was supposed to be on oxygen, but could not afford to pay for it. [AR 61]. Plaintiff experienced pain in her hands, feet, back, legs, and neck caused by Parkinson's disease and bone spurs in her neck that were turning into arthritis. [AR 55]. She was unable to get down on her hands and knees, experienced dizziness and numbness in her arms, and could walk or stand for 5 to 10 minutes before needing to sit down. [AR 62]. She also was depressed because she was unable to care for herself, and was being treated with medication, but was not attending counseling. [AR 55]. The medication to treat her depression had helped

---

[2] Paroxetine (the generic form of Paxil) is a selective serotonin-reuptake inhibitor that is used to treat depression, panic disorder, social anxiety disorder, obsessive-compulsive disorder, generalized anxiety disorder, and post-traumatic stress disorder. See United States National Library of Medicine and National Institutes of Health, MedlinePlus website, Paroxetine, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698032.html (last accessed Mar. 18, 2013).

[3] Metformin is in a class of drugs called biguanides that help to control the amount of glucose (sugar) in a person's blood and is used to treat type 2 diabetes. See United States National Library of Medicine and National Institutes of Health, MedlinePlus website, Metformin, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a696005.html (last accessed Mar. 18, 2013).

[4] Vicodin is the brand name for a combination of hydrocodone, an opioid pain medicine, and the analgesic acetaminophen. Vicodin is used for the relief of moderate to moderately severe pain. See Abbott Laboratories, Vicodin website, available at http://www.vicodin.com/patient/index.cfm (last accessed Mar. 18, 2013).

[5] Flexeril (the generic form is called Cyclobenzaprine) is a muscle relaxant that is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. See United States National Library of Medicine and National Institutes of Health, MedlinePlus website, Cyclobenzaprine, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682514.html (last accessed Mar. 18, 2013).

reduce her symptoms a little, but she continued to feel depressed because her medical condition was worsening. [AR 56]. She and her husband had to move in with her in-laws four months before the hearing because of their financial situation. [AR 57]. Plaintiff's daily routine consisted of waking up, eating breakfast, taking her medications, and then either lying down or sitting up and watching television for a little while before lying down. [AR 57]. Her mother-in-law then made her lunch, after which she sat down or went to sleep. [AR 58]. After dinner, plaintiff again watched a little television and then went back to bed. [AR 58]. She could not do any of her previous hobbies anymore, and only goes to church once in awhile. [AR 58-59]. She did not do any housework or wash the clothes, but she went shopping once a week with someone to assist her. [AR 59].

The ALJ summarized plaintiff's hearing testimony as follows:

> At the hearing, the claimant testified that she does not drive as she was advised she should not due to medication and Parkinson's disease. She said this was diagnosed by John Batton, a physician's assistant about one year ago. She is still waiting to see a neurologist. The same PA diagnosed diabetes and she takes medication twice a day. She does not check her blood sugar. She has gained and lost weight in the last year. She takes Vicodin for pain in multiple areas. [¶]. She has 3 bone spurs in her neck. She started having depression about 8 months ago when she could not help herself. She takes medication but has not had any counseling. She lives with her in-laws for financial reasons. She gets up in the morning, has breakfast then watches TV for awhile, and lays back down again. Pain medication helps a little. Muscle relaxants do not help. Her mother-in-law makes meals. She goes to church occasionally, shops once a week, does no housework. She has had Hepatitis C and had interferon treatment. She is supposed to be on oxygen to help breathing but cannot afford it. She also has numbness in her arms. She could walk for 5 to 10 minutes then has to sit. She can stand for 5 to 10 minutes. She gets dizzy from the medication and has fallen twice when getting out of bed.

[AR 23-24].

The ALJ summarized the objective medical evidence as follows. [AR 24-24]. The Commissioner's consultative physician, Kristol Siciarz, M.D., found bilateral tremor in the hands but concluded that it was

not significant enough to interfere with fine manipulation. Plaintiff had grip strengths of 45 pounds on the right and 35 pounds on the left, with full range of motion of both wrists and hands. Dr. Siciarz opined that plaintiff was capable of medium work. [AR 24, 186-190]. The nonexamining state agency physicians subsequently reviewed plaintiff's file and concurred with Dr. Siciarz's conclusions. [AR 24, 223-224]. The nonexamining state agency psychiatric consultants indicated that plaintiff can perform unskilled, non-detailed, simple repetitive work tasks, had adequate pace and persistence to perform the above work tasks for a normal workday and work week, can relate in an appropriate, socially effective manner with coworkers, supervisors, and the general public and can adapt appropriately to a variety of work settings, situations, requirements, and changes. [AR 24, 191-204].

The ALJ found that plaintiff's tendonitis and depression could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements concerning their intensity, persistence, and limiting effects of her pain were not credible to the extent that they were inconsistent with the ALJ's RFC finding. [AR 24].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity,

and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c) (3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n. 5 (9th Cir. 1989).

Because there was no evidence of malingering, the ALJ was required to articulate specific, clear and convincing reasons to support his negative credibility finding. The ALJ gave the following reasons for rejecting the alleged severity of plaintiff's subjective symptoms: (1) her diagnosis of Parkinson's disease was made by a physician's assistant, not by a physician; (2) there was "no objective evidence" to support plaintiff's allegation that she has pain all over her body; (3) the internal medical examination by Dr. Siciarz showed that plaintiff had "very few problems"; (4) plaintiff "is under a lot of financial pressure as her husband in unemployed"; and (5) plaintiff alleges "very little activity of daily living other than watching television all day." [AR 24].

The ALJ's first reason is not clear and convincing because he misapplied the "acceptable medical source" standard in this context. The Commissioner "will consider all of the available evidence in the individual's case record." SSR 06-03p, 2006 WL 2329939, at *1. Evidence from an "acceptable medical source," such as a licensed physician or psychologist, is required in three circumstances: (a) to establish a "medically determinable impairment"; (b) to provide medical opinion evidence; and (c) to be considered a treating source whose medical opinions may be entitled to controlling weight. SSR 06-03p, 2006 WL 2329939, at *1-*2. The ALJ is, however, authorized to use information in the record from "other sources," such as a nurse practitioner or physician's assistant, to show "the severity of the individual's impairment(s)

6

and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *1-*2; see 20 C.F.R. §§ 404.1508, 404.1513, 416.908, 416.913.  The Commissioner has explained that

> [w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p, 2006 WL 2329939, at *3.  The same factors that govern how opinions from acceptable medical sources are weighed apply to evaluating opinion evidence from other sources. SSR 06-03p, 2006 WL 2329939, at *4-*5; see 20 C.F.R. §§ 404.1527(d), 416.927(d).  Depending on the particular facts and circumstances, the opinion of an other source may be entitled to more or less weight than the opinion of an acceptable medical source. SSR 06-03p, 2006 WL 2329939, at *5; see Gomez v. Chater, 74 F.3d. 967, 970-971 (9th Cir.), cert. denied, 519 U.S. 881 (1996). "For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."  SSR 06-03p, 2006 WL 2329939, at *5.

Plaintiff testified that for the past three years, she had received all of her medical treatment from nurse practitioner John Batten ("NP Batten"), who worked at a county clinic. [AR 51-52].  He diagnosed her with Parkinson's disease.  She was waiting for an appointment with a neurologist. [AR 52].  The clinic she attended was staffed by two nurse practitioners and a pediatrician, but no other physicians. [AR 56-57]. Plaintiff also testified that she had no medical insurance, had been paying out-of-pocket for her medical care, and was in the process of applying for MISP (Medically Indigent Services Program) benefits. [AR 52-53, AR 55].

The ALJ permissibly found that NP Batten's evidence was insufficient to establish Parkinson's

disease as a medically determinable impairment and was not a controlling treating source opinion. Since, however, the ALJ found that plaintiff had severe medically determinable impairments, the ALJ was required to consider the evidence from NP Batten to evaluate the severity and functional effects of those impairments. In the context of evaluating the credibility of plaintiff's subjective complaints, it was error for the ALJ to reject or give "little weight" to NP Batten findings and conclusions merely because he was an "other source," without applying the factors used to weigh medical opinions set forth in the Commissioner's regulations. See SSR 06-03p, 2006 WL 2329939, at *4-*5; 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ's second reason for doubting the veracity of plaintiff's subjective complaints was that there was "no objective evidence" to support plaintiff's subjective complaints of pain in her hands, feet, back, legs, and neck, and the third reason was that Dr. Siciarz's examination report showed "very few problems." [AR 24]. The ALJ already found that plaintiff's severe medically determinable impairments could reasonably be expected to cause her alleged symptoms. [AR 24]. Therefore, the ALJ's finding that the objective medical evidence in the record, including Dr. Siciarz's examination findings, failed to support plaintiff's pain complaints is properly understood as a finding that the objective evidence does not fully corroborate the alleged severity of her pain. See Fair, 885 F.2d at 602 ("Excess pain is by definition pain at a level above that supported by the medical findings . . . .").

A lack of medical evidence corroborating the alleged severity of a claimant's subjective symptoms is one reason the ALJ may consider, but it cannot form the sole basis for discounting subjective symptom testimony. Burch, 400 F.3d at 681; Bunnell, 947 F.2d at 343, 345. Furthermore, the ALJ apparently gave little weight to objective evidence that tended to bolster the credibility of plaintiff's subjective complaints, such as evidence that she had been prescribed benzotropine, which is used to treat the symptoms of Parkinson's disease as well as tremors due to other causes[6], and Vicodin, a narcotic pain medication. Cf. Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (holding that the ALJ properly rejected the

---

[6] See United States National Library of Medicine and National Institutes of Health, MedlinePlus website, "Benzotropine Mesylate Oral," available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682155.html#why (last accessed March 20, 2013).

claimant's testimony because he did not use "Codeine or Morphine based analgesics that are commonly prescribed for severe and unremitting pain"). [AR 255-259]. Standing alone, the ALJ's finding that "no objective evidence" corroborated plaintiff's pain complaints is not sufficient to support the ALJ's adverse credibility finding.

The remaining two reasons cited by the ALJ for his credibility finding are not clear and convincing. The ALJ said that he discredited plaintiff's subjective complaints because she was under "a lot of financial pressure" since her husband is unemployed. [See AR 24]. A person must have "limited income and resources" in order to be eligible for SSI benefits in the first instance. 20 C.F.R. § 416.1100; see 42 U.S.C. § 1382(a); 20 C.F.R. § 416.1205. Therefore, being under "financial pressure" is not a legitimate reason for disbelieving plaintiff's subjective allegations. Townsend v. Astrue, 2013 WL 687042, at *8 (D. Or. Feb. 25, 2013) (holding that the ALJ erred in using the claimant's "financial distress as a reason to doubt his credibility"); Edgar v. Astrue, 2010 WL 2730927, at *5 (D. Or. June 2, 2010) ("The ALJ may not chastise a claimant for seeking disability benefits payments; such reasoning circumvents the very purpose of disability benefit applications.")(citing Ratto v. Sec'y, Dep't of Health & Human Servs., 839 F.Supp. 1415, 1428 (D. Or. 1993) (holding that the ALJ erred in discounting the claimant's "subjective complaints and the corroborating testimony of her husband because of her 'clear secondary gain motivation,' i.e., she was applying for disability benefits. By definition, every claimant who applies for Title II benefits does so with the knowledge–and intent–of pecuniary gain. That is the very purpose of applying for Title II benefits.")); see also Fair, 885 F.2d at 602 (noting that the ALJ's credibility assessment is "exceptionally important in excess pain cases" because "incorrect denials can leave deserving claimants, who are often in precarious financial conditions, without a crucial source of income"). The ALJ failed to make any specific findings or cite any evidence in the record to support an inference that plaintiff's financial pressures caused her to be untruthful in her allegations of excess pain. Cf. Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996) (agreeing with the ALJ that a "strong element of secondary gain" undermined the claimant's subjective testimony where, "[d]espite testifying to an inability to work because of his condition, [the claimant] at one point conceded that 'he can go out and find a minimum wage job at any time, but he is more worried about the future'"). As a result, the ALJ failed "to convincingly justify his rejection of" the alleged severity of

plaintiff's subjective symptoms. Fair, 885 F.2d at 602.

The ALJ also indicated that he disbelieved plaintiff's subjective complaints because plaintiff "alleges very little activity of daily living other than watching television all day." [AR 24]. That testimony did not detract from plaintiff's credibility because it was consistent with her subjective complaints, and the ALJ made no finding that "the ability to perform those daily activities translated into the ability to perform appropriate work." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).

The Commissioner contends that the ALJ permissibly discounted plaintiff's subjective complaints because she "did not see a neurologist, nor was she diagnosed by a medically recognized source," and that her "unexplained failure to have neurological tests, or any tests for Parkinson's disease" was evidence of "minimal or conservative treatment" that supported his credibility finding. [JS 19; AR 23-24]. The "unexplained, or inadequately explained failure to seek treatment or follow a prescribed course of treatment" is relevant to assessing the credibility of a claimant's subjective complaints. Bunnell, 947 F.2d at 346. In light of plaintiff's uncontroverted testimony that she lacked medical insurance, paid out-of-pocket for treatment (while, as the ALJ noted, being under "a lot of financial pressure"), could not afford oxygen treatment that had been prescribed, and was applying for MISP benefits, plaintiff's failure to obtain additional neurological evaluation and treatment was neither unexplained nor inadequately explained. Therefore, the Commissioner's argument lacks merit.

For all of these reasons, the ALJ did not articulate legally sufficient reasons for rejecting the alleged severity of plaintiff's subjective complaints of pain and functional limitations.

**Lay witness statements**

Plaintiff contends that the ALJ erred in failing to discuss the written third party "Function Report" from plaintiff's friend, Kathy Barger. [JS 11-14].

Under Ninth Circuit law, "[t]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings." Robbins, 466 F.3d at 885. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the

testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

The ALJ erred in completely ignoring Ms. Barger's statement regarding plaintiff's functional limitations, which was consistent with plaintiff's improperly discredited testimony. [AR 121-128]. Moreover, the ALJ's error was not harmless because several of the limitations contained in Ms. Barger's report were not included in plaintiff's RFC. [AR 23]. As a result, the court cannot conclude that no reasonable ALJ, when fully crediting Mr. Barger's statements, could have reached a different disability determination.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has adopted the "Smolen test" to determine whether evidence should be credited and the case remanded for an award of benefits:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)). Where the Smolen test is satisfied with respect to the evidence in question, "then remand for determination and payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting" the improperly discredited evidence. Harman, 211 F.3d at 1179; Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1400-1401 (9th Cir. 1988).

The appropriate remedy in this case is a remand for further administrative proceedings because it is not clear from the record that the ALJ would be required to award benefits if plaintiff's and Ms. Barger's testimony were credited. On remand, the ALJ shall take appropriate steps to develop the record, conduct

a supplemental hearing, and issue a new decision that applies the correct legal principles and includes a complete evaluation of the medical evidence and testimony of record. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (applying the Smolen test to hold that while the ALJ did not properly reject the opinions of the treating physicians or the claimant's subjective complaints and lay witness testimony, several "outstanding issues" remain to be resolved, including whether, according to a vocational expert, there was alternative work the claimant could perform).[7]

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed**, and the case is **remanded** for further administrative proceedings consistent with this memorandum of decision

**IT IS SO ORDERED.**

March 28 , 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[7] This disposition makes it unnecessary to consider separately plaintiff's remaining contention that the ALJ erred in rejecting the diagnosis of Parkinson's disease. [JS 4-6, 10]. On remand, the ALJ shall reevaluate the medical evidence and make appropriate findings with respect to all of plaintiff's impairments that are supported by the record.